Council, you're reserving four minutes. Yes, Your Honour. Again, I'll let you know when you run up on it. May it please the Court. This case concerns the broadest reasonable interpretation of Claim 2 of the 086 patent. Speak up, sir. The other four claims of the 086 patent were held invalid by the Board below, and they're not being challenged here on appeal. Dartmouth originally filed a cross-appeal and then later dismissed that cross-appeal, and so that ruling that the other four claims are anticipated is final and uncontestable. Claim 2 of the 086 patent is a dependent claim, which depends from Claim 1. Claim 1 is drawn to a pharmaceutical composition comprising nicotinamide riboside, which the parties refer to as NR, in admixture with a carrier, wherein the composition is formulated for oral administration. Dartmouth says that under your preferred construction of isolated, if one milks a cow or if one skims fat off whole milk that one has isolated NR, is that a fair characterization of your proposed construction? Yes, Your Honour. We do believe that skim milk falls within the scope of Claim 2, that it's covered by it. And milk coming out of a cow has been isolated? It certainly could be, Your Honour. We are not pressing that argument on appeal, and I don't think that the Court needs to get there in order to resolve this issue. But I do think I'd like to make two points. Well, it's not a question of needing to get there. If we're there, I think that's problematic. Your Honour, let me make two responses to that. The first is that, as I mentioned, it is now uncontestable that the administration of skim milk or the administration of buttermilk anticipates Claim 1. So we know that Claim 1 reads on, is covered by, anticipated by skim milk and buttermilk. It all comes down to the meaning of isolated. And as I understand it, you're relying on the breadth of a broad definition that says something to the effect of, as used herein in this specification, the word isolated means, and it's broad. And that's what you're relying on. And you think we should not consider anything else in this specification, including the repeated examples which say that the NR can be isolated from milk? Well, I don't think that there's anything in the specification that is inconsistent with our position. But first, let me just state that Claim 2, what Claim 2 is doing is it is adding a source limitation to Claim 1. So the specification says that there are three sources. That's your interpretation of it, right? You're saying it can come from a natural source, a synthetic source. But why shouldn't isolated be given some meaning? I think your argument for why it should be given a meaning that's inconsistent with this plain and ordinary meaning is that you think the patent owner here chose to be its own lexicographer, right? Yes, Your Honor. And it shows, I mean, the way that it chose to define isolated is not strange, given the time in which this patent was drafted and prosecuted. This is the pre-myriad days where the word isolated was frequently inserted into claims in order to address potential 101 rejections. And so you would isolate DNA by cutting the DNA out of a cell. But that word was not intended to, it was really just, that's the slightest hand of man so that the claim would get over a 101 problem. But it wasn't, it certainly, certainly was not intended. We shouldn't be thinking about that though, right? We should just be focusing on the intrinsic evidence here. Yes, Your Honor. But I think it explains why, I think it explains why isolated was defined the way it was. And why it was defined as broadly as it was. Because the applicant intended for that word to be extremely broad. Really as broad as possible to exclude only. Okay, but setting that aside, your interpretation, what you think they were thinking. Why don't you really just focus on the intrinsic evidence? Okay, so the, we think, if we begin with the claim. So the specification clearly states that there are three sources of NR. That's undisputed. Dartmouth agrees with that. And the specification says that there are three sources. There are natural sources, there are synthetic sources, and then there's chemical synthesis. And so what Claim 2 is doing, it is narrowing the scope of Claim 1 to exclude chemical synthesis. And it is saying, while Claim 1 can include NR that was made with chemical synthesis, Claim 2 cannot. It can only have NR that is drawn from a natural or synthetic source. Why is the board wrong in its conclusion that reading the specification as a whole, a person of ordinary skill in the art would not interpret isolated to be as broad as you're arguing? Because there is no support for that finding. The board, there's no expert testimony to support that argument. Dartmouth's expert did comment on claim construction in his declaration, but he didn't comment on Claim 2. And he certainly didn't disagree with Elysium's proposed construction or offer any expert testimony to support the board's construction. What about the, there's a couple places, as I mentioned before, in the specification that say the NR is isolated from milk. Why doesn't that support the proposition that whatever isolated means, it surely doesn't mean just having milk? Well, I think what the specification says is that milk can be a source of NR. And that is exactly what the prior art disclosed. So you don't think, I mean, for example, in column 26, lines 32 through 34, it says the NR is isolated from deproteinized whey fraction of cow's milk. And there's other places, too, and they use the word isolated. They're not just saying, there are places, I guess, where the patent specification says that the NR could be, the source of the NR could be milk. But what I just read to you uses the word isolated. Yes, Your Honor. And so our response to that is that is exactly what is going on in the prior art. Both pieces of prior art involved processed milk products, skim milk and buttermilk, where whole milk is being processed to create a new product that is different from the whole milk and where the NR has been isolated. I understand. I understand what the prior art teaches. I'm asking you why the specification, with its example of saying that NR is isolated from milk, why that doesn't support the board's conclusion that it can't just be skim milk or buttermilk, as was the case in one of the references. I have two responses to that. The first is that the statement that you just referred to is not inconsistent with the broad definition. It falls well within the scope of what isolated means as defined in the specification. It may be more isolated than what is defined in the specification, but it's not inconsistent with it. The second thing, and this perhaps is even more important, there's nothing in the specification, certainly nothing in that statement, that gets you to a 25 percent purity requirement, which is what the board held. Right, and so there, the board would say, and the board held, I guess, that a person born in Erie Scale, New York, would not limit the language in Column 9, Lines 10 through 12 to a polypeptide, that they would read it as being broader than that. That's correct, Your Honor. That is what the board held, and we think that that is simply, that is not a grammatical reading of that sentence. The first sentence says, here is what isolated molecule means, and it defines it broadly to include things like DNA and cDNA and polypeptides. And then in the next sentence it says, when the isolated molecule is a polypeptide. And if that sentence is to make sense, it must mean only when the isolated molecule is a polypeptide,  And so they've taken something that, by its plain terms, applies only to polypeptides, and said that it applies to all isolated molecules. It applies to... So the patent justification talks about NRK, as well as NR... NRK is unclaimed, right? Correct. Is NRK something that can be made as a pharmaceutical composition? I don't know the answer to that. The specifications... How do you... Tell me, I don't have this kind of technical background. Tell me what happens to the NR and how it becomes NRK. The... Well, so the NRK, the discussion of NRK in the specification really, I think, is talking about a different invention altogether than the one that is claimed in the patent. As I understand it, the enzyme is metabolizing nicotinamide riboside along a pathway in order to increase NAD+. So I guess just to kind of reiterate a couple of the arguments. So we think that there's really no way to square the grammatical language of column nine, the definition, to impose a 25% purity requirement on any isolated molecule. It's just not what the specification says, and it certainly was not putting the public on notice that claim two carries with it a 25% purity requirement. Notably, Dartmouth itself, the patent owner, the party that filed this patent application, prosecuted it, and now owns it... The PTAB in its anticipation analysis concluded that it didn't even need the 25% purity requirement to find not anticipated because of Goldberg. Correct, Your Honor. So what the board did in sort of its fallback position is it said, okay, if there's no purity requirement, then the NR must be isolated from all of the components of the natural source. All of the fats, all of the carbohydrates, all of the salts. So they said, here's our second possible claim construction in just a two-paragraph section of its opinion. And so that construction is wrong as well, because there's nothing in the specification that says that the NR has to be 100% isolated from its source. Even in the fractionated whey protein example that was referenced earlier, it's not completely separated from the NR. But that leads me to... You're in your response time. Keep going. It's up to you. Okay. I'll reserve my time. Thank you. All right. May it please the Court. Your Honors, much of the discussion today, this morning, has been about the board's construction. But what I'd like to start with is probably the most simple path to affirming the board's decision. Let me ask you a question. On page 20 of the blue brief, Elysium says you, quote, never even attempted to submit evidence to support the PTAP's construction. And separately, you never, quote, never opined that the PTAP's construction was correct or that Elysium's peroxide construction was incorrect. We asked about expert. Is it true? Is what they're saying true? Did you make that argument? And where is it in the record? What they're saying is not true. We certainly have plenty of evidence to support the PTAP's construction. There is no expert testimony on, really, either side that talks about this 25% purity limitation. What we have is expert testimony from Elysium where they just quote the definition and apply it. They take this broad grammatical reading. The question is, did you present any argument in support of the board's construction? Absolutely. Yes, we did. Where's that? In support of the board's construction, first, we have this notion that it isn't possible to read this definition the way that Elysium wants to read it. What was in the record is what we're saying. Okay, sure. So, the definition in a vacuum is at column 9 of the patent. Isolated means a molecule separated or substantially free from at least some of the other components of the naturally occurring organism. What line are you on? Sorry, line 5, 6, and 7. Okay. And so, what Elysium wants to do is take that definition, read it in a vacuum, and say, okay, well, if we pull a single molecule out of the naturally occurring organism, the cow, we have isolated NR. How do we know that that's unreasonable? How do we know that that can't make sense? Well, I would like to turn you to column 27 of the patent. Actually, the last line of column 26, the last word, natural, bridging over to column 27, this is the portion of the specification that identifies what the natural sources of NR are. And the natural sources of NR from which you can isolate something is a list of foods. This is a list of food items from which you can isolate NR. And that list says cow's milk, serum meats, eggs, fruits, and cereals. It is impossible to read a claim that calls for isolated NR, NR that's isolated from a natural source, on the source itself from which you isolate the NR. There's the long line of cases, SciMed, that says... Well, they want you to read it onto the cow. Well, it's interesting, Your Honor, because if you look at their reply brief, we made this argument that there's no way you can read this on milk that comes from a cow. And their response in their reply brief is, no, no, no, we're not talking about whole cow's milk. We're talking about processed milk here. They're trying to draw a line between cow's milk and processed milk. Why? Because they say the prior art is skim milk and buttermilk. That's processed milk. But today you heard a response where they were waffling a little bit about whether or not isolated NR would cover actual whole milk coming from a cow. I don't think that waffled. It was conceded. Okay. And so now where they want to draw the line is between processed and unprocessed milk. But there's no support in the specification for that. There's several portions of the specification that talk about milk being a source of NR. It never says unprocessed whole milk. And then if you look at this list of sources, these foods, it shows that this line that they're trying to draw between processed and unprocessed is just silly, presumably under their logic. He might have even admitted today that, in his view, unprocessed milk would satisfy this claim. I believe that he admitted that. I think he did say that today, but in their reply brief. Even setting that aside, as I understand your argument, is that no matter what you think the claim construction is, it can't include milk. No matter what the claim construction is, it can't include milk, certainly. But it also can include skim milk or buttermilk. Right? Because they're trying to draw this line between whole milk and skim milk or buttermilk. But there isn't a line in this list of natural sources between processed and unprocessed foods. Under their proposed line drawing, if you pick a banana off a tree, you've got yourself a natural source of NR, but you peel that banana and it's no longer a natural source. One of the examples is eggs. Whole eggs from a chicken. Well, you crack those eggs, you've removed the shell, and all of a sudden that's processed and it's not a source. Meats is another one. Presumably under their construction, any sort of butchering of the meat. You're beating this horse to death. Okay. But the reason that I'm beating this… Whether it's skimmed or not. Right. But the reason I'm beating this horse to death is that, and this goes to the point that your honors made about what the appellants have called the alternate construction. And what I think the appellants have kind of mischaracterized this alternate construction because what the board said was, okay, if you don't like the 25% limitation, we still have no anticipation. Why is that? What you heard appellants say was, well, there's a portion in the specification that says when you're going to isolate milk, you've got to get rid of all these other components. So that means it has to have a high purity level. But that's not what the board said in its alternate construction. What the board said, I'm quoting from appendix page 27 and 38. They say thus, regardless of whether the claims require a minimum percentage of NR, we find that the NR present in skim milk is not isolated because significant amounts of other components remain after the fat is removed. So what the board is saying is that if you don't like the 25%, we know that there has to be something more than an insignificant amount. And there's no evidence that the prior art has anything more than an insignificant amount. How do we know that? Well, Dartmouth submitted evidence in its brief at pages 34 and 37 that whole milk has .0001097% NR. And skim milk has .0001143% NR. And those numbers are not challenged by appellants in this case. And so when we look at the definition of isolated in column nine of the patent, it has the definitional phrase, but immediately after that it talks about the polypeptides. And it lists a number of purities where 25% is the lowest purity for the polypeptides. So that follows the definitional phrase. So we know at the very least that an isolated molecule has to have some minimum level of purity. A reader is going to understand that from the specification. So what is that minimum level of purity for NR in this case? Appellants would say that for the polypeptides that minimum level is 25%. But for every other molecule, it's completely de minimis. It would cover the tiny amounts in milk. And there's no way that you can read this claim on milk. We know that can't be possible. So we know that this broad grammatical reading of this single sentence in column nine can't be right. We know it can't be right. So the question is, is where do you set that purity level? And what the board found was, well, we think it's 25%. We think there's enough information in the specification to put it at 25%. But even if there isn't, we know it's got to be more than de minimis. It's got to have some significance to it. And there is no evidence in the product. Do you submit any expert testimonies for that, that oppose their reading this specification, would think that it has to be at least 25%? At least 25. Not the 25%, but there is evidence. The intrinsic evidence shows. I understand. Maybe you can say, I don't think we needed it. Yes, certainly, I don't think we needed it. But there's certainly evidence in the record in terms of the percentages of NR that are actually in milk. And these are the sources of milk. Don't you think it's kind of weird for the court to, I mean, it is true. They have an argument that that reference to 25%, 50%, and all those other percentages does say it's limited to a polypeptide, right? Well, that sentence surely does talk about the polypeptides. It says, with respect to polypeptides, isolation requires this level of purification. Sure. And so the question is, how can you anchor the NR to that 25% number if you're going to support the 25% number? Especially when there's disclosure of NRK in the specification. Sure. And to answer your question that you asked of appellant's counsel, Your Honor, can NRK be a molecule that's isolated for therapeutic administration? The answer to that question is yes. That's in column 19 of the patent. And this gets to the issue of, and I think part of the reason why you were asking that question, Your Honor, is that what do we know about the polypeptides? This talks about therapeutic administration of the NRK polypeptides can be purified. And then it goes on to talk about the isolation techniques that you use for the polypeptides. And those are centrifuging. And you're ripping out the cellular debris. And then you go to the fractionation techniques that are identified for isolating NR. Does this discussion help your claim construction? I think so, yes. Because the separation. I read all of this. Okay, sure. So the techniques for isolating NRK, the polypeptide, are the same as the techniques that are used for isolating NR. These are laboratory techniques for ripping out a small molecule from a bunch of other small molecules done at a molecular and subcellular level. It's talking about ripping out these small molecules from cellular debris. It's not skimming the fat off milk. If we conclude that the PTAB's claim construction is not supportable because they incorporated the 25% from an inappropriate part of the written description, can we still find that they were correct on their anticipation ruling? And if so, how? Absolutely. Two different ways. One is the notion that regardless of what the definition is, regardless of the claim construction, that this claim, too, cannot read on the prior art. As a matter of law, under SCIMED and all the cases that say that when the patent specification makes it clear that a particular feature isn't covered by the invention, then it is improper to construe claims to cover that feature. And what we're doing or what appellants are trying to do in this case is read the claims on the sources from which you isolate NR. The second way that you could affirm the board's decision is through this alternate construction. The alternate construction is if we don't like the 25%. We know that number. You like the 25%? What's that? Do you like the 25%? I think the 25% is a reasonable construction in light of the specification. I think the broadest construction that we're hearing from appellants is unreasonable and not supportable. Let's assume we don't like the 25%. Go with your second point. The second point is the board's alternate construction, and that is we know there has to be some minimum level of purity. We don't know what that number is, but we do know it has to be more than insignificant. And we don't have an exact number for that, but we don't know how much NR is in the prior art. What we do know is that in the prior art, these are milk sources. These are the sources from which you isolate. And so there's no evidence that there's anything more than de minimis amounts of NR in the prior art. If we don't like the claim construction, don't we have to send it back to the PTAB and say, your claim construction doesn't work, rethink it, or can we just go ahead and adopt their anticipation ruling? You can adopt their anticipation ruling for those two reasons that I just said. You don't need a construction of isolated in order to affirm the board's decision, because regardless of the construction, there's no way to read that claim on buttermilk and skim milk. Okay. That's the Goldberg problem. Yeah. All right. Thank you. Thank you, members. I'd like to begin by addressing this question of whether regardless of the claim construction, the claim is anticipated. That is a disavowal argument. There is no disavowal here. The rules for disavowal are strict, and they are not met here. Nowhere in the specification does the applicant say, our pharmaceutical composition is not skim milk, is not buttermilk. They simply talk about milk as being the source of NR, and that is exactly what is in the prior art. The other thing is that they have already admitted it is incontestable that the prior art, buttermilk, and skim milk anticipate all of the other claims of this patent, and there is no reason to think that claim two alone should survive because of the few references to milk in the specification. With respect to the alternate construction, there needs to be a claim construction before any tribunal can address the anticipation question. Dartmouth wants to say, let's not do claim construction. Let's just get to no anticipation. It's as if they have a negative limitation, right, in a sense. Whatever this claim construction is, whether it's the broader construction of isolated, you know, the definition in the specification, the specification also lets you know that it's not milk. So it would be isolated but not the natural source itself. But the specification never says, our pharmaceutical composition comprising NR, isolated from a natural source, that is not milk. The specification barely talks about pharmaceutical compositions. But if we were to isolate it, we should be focusing on it. Okay. And so if we can just talk about the claim 2627 NR detection method for a minute. And so that is all about, that is a laboratory test to determine whether or not a potential source of NR, your fruit or your meat, has or does not have NR. And the specification says, the first thing you can do is prepare a sample, an isolated extract of the source to see whether or not it has NR or doesn't have NR. So you prepare your sample. You test it. It has NR or it doesn't have NR. If it has NR, you can further fractionate it. If it doesn't have NR, the purity of NR is zero. There's no connection between the NR detection method description and a 25% purity limitation. And their argument that we need to look to column 26 and 27 to impose this stringent requirement on isolated, is flatly inconsistent with the express definition of the word. I mean, the public and people out there in marketplace should be able to read a specification and see they have expressly defined this. They use the word, an isolated molecule means X. And they should be taken at their word. And we shouldn't have the claims dramatically rewritten, dramatically narrowed in an IPR, so that they can avoid the prior art. Your view is they've milked that for all it's worth. Excuse me? Skim milk, your honor. Skim milk and buttermilk. Okay. That's better than buttermilk. I also say that there is a fundamental difference between a purity requirement and a source requirement. And Dartmouth wants to begin with the assumption that there must be a purity requirement in this claim. Why? The claim adds a source limitation. If the applicants wanted a purity limitation, they could have easily said, where in the NR constitutes at least 25% of the product. And they elected not to do that. They've enjoyed these broad claims for years. I thought the same. Thank you, your honor. I would commend counsel, I don't know if you're familiar, but I would commend you both to the actual history of Dr. Goldberger. He's a fascinating character. Thank you.